AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

**FILED**

**June 30, 2023**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No. 3:23-MJ-633-BK |
| AARON JUSTICE DAVIS, JR | ) | |
| A.K.A. "SONNY" | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February - June, 29, 2023___ in the county of ___Dallas___ in the ___Northern___ District of ___Texas___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C.§ 846 | Conspiracy to Distribute and Possess with the Intent to Distribute a Schedule II Controlled Substance. |

This criminal complaint is based on these facts:

See attached Affidavit of TFO Justin Guinn.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Justin Guinn, DEA TFO
*Printed name and title*

Agent sworn and signature confirmed via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1.

Date: ___June 30, 2023___

_____
*Judge's signature*

City and state:   ___Dallas, Texas___

RENEE HARRIS TOLIVER, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT TO SUPPORT THE ISSUANCE OF A COMPLAINT

I, Justin W. Guinn, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being duly sworn, deposes and states:

### Preface

1.      This affidavit sets forth facts and suggests reasonable inferences from those facts establishing that there is probable cause to believe that from at least February, 2023 to June 29, 2023, in the Dallas Division of the Northern District of Texas and elsewhere, **Aaron Justice DAVIS Jr aka "Sonny,"** and others known and unknown conspired to distribute a mixture or substance containing a detectable amount of cocaine base in violation of Title 21 U.S.C. 846 – Conspiracy to Distribute and Possess with the Intent to Distribute a Schedule II Controlled Substance.

2.      The information contained in this affidavit is based on my personal knowledge and experience, my personal participation in this investigation, and information obtained from other law enforcement officers and/or agents involved in this investigation. Since this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that a violation of 21 U.S.C.§ 846 has been committed by **Aaron Justice DAVIS Jr aka "Sonny."**

### Introduction

3.      I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing

1

the criminal laws and duly authorized by the Attorney General to request a search warrant.  I have been a deputized TFO assigned to the DEA since May 2018, and I am currently assigned to Strike Force 2.  I have been employed by my parent agency, the Grand Prairie Police Department (GPPD), for approximately nine years and have been assigned to the Narcotics Division for approximately the last eight years.  I am currently certified as a Master Peace Officer by the Texas Commission on Law Enforcement.  As a law enforcement officer, I used a variety of methods investigating drug-related crimes, including, but not limited to, visual surveillance, witness interviews, the use of search warrants, confidential informants, undercover agents, pen registers/trap and trace devices, mobile tracking devices, and numerous Title III wire interceptions.

4.     Based on my training and experience and based upon interviews with defendants, informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways drug traffickers conduct their business.  My familiarity includes the means and methods drug traffickers use to import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions.  I also am familiar with how drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, using carriers to transport currency and proceeds, electronically wiring proceeds to foreign countries, depositing proceeds into funnel accounts, and using third parties to purchase or hold title to assets.

## Background of the Investigation

5.      Your affiant is currently investigating a drug-trafficking organization distributing quantities of crack cocaine, fentanyl, and other drugs in the Northern District of Texas.  To date, the investigation has utilized several investigative techniques, including controlled purchases of drugs, physical surveillance, and the use of mobile vehicle tracking devices.

6.      In February 2023, the North Texas Strike Force – Group 2 (SF2) received information from the Dallas Police Department that **Aaron Justice DAVIS Jr aka "Sonny,"** a Dallas-based narcotics distributor was distributing large quantities of illegal drugs from multiple "trap" rooms in the Northwest Dallas, Texas, area, namely the Motel 6 located at 2660 Forest Lane, Dallas, Texas.  Your affiant knows that a "trap" room or a "spot" is a location that drug dealers use to distribute controlled substances to customers.

7.      Strike Force 2 investigators are familiar with **DAVIS** as being part of a larger drug trafficking organization led by a person known to your affiant that is operating out of the Northwest Dallas area of Dallas. DEA investigators, in conjunction with investigators with the Dallas Police Department (DPD), Northwest Patrol, Crime Reduction Team (CRT) have been working towards dismantling this organization since the seizure of the location formerly known as the Han Gil Hotel located at 11301 Dennis Road, Dallas, Texas.

8.       In late July 2018, law enforcement officers from the Coppell Police Department advised the United States Attorney's Office that on June 24, 2018, former Coppell High School graduate Justin Bruckman died of a heroin overdose at a location

called the Han Gil Hotel Town (Han Gil Hotel) located at 11301 Dennis Road, Dallas, Texas. Detectives advised that approximately two weeks later, Reno Nugent, another former Coppell High School student, died of a heroin overdose on July 4, 2018, after purchasing heroin at the Han Gil Hotel. The government learned that a third former Coppell High School student died of a heroin overdose on August 10, 2018.

9.      Coppell detectives investigating the overdose deaths learned that during the summer of 2018, multiple young people from Coppell were routinely traveling to the Han Gil Hotel to purchase heroin, cocaine, and other drugs. During the investigation into the overdose deaths, DEA agents and Coppell Police Department detectives learned that Justin Bruckman was with two other former Coppell High School students, M.B. and K.S., inside a Han Gil Hotel room at the time of his death.

10.      On August 21, 2018, M.B. and her attorney met with DEA agents and prosecutors at the United States Attorney's Office in Dallas. At this initial meeting, M.B. described the Han Gil Hotel as a location where multiple drug dealers utilized rooms within the hotel to sell heroin, cocaine, methamphetamine, and other drugs to numerous customers on a daily basis. She advised that the Han Gil Hotel was not a legitimate hotel. She stated that virtually every guest was either a drug dealer or a drug user. She described a commercial establishment where the owner was aware of the criminal conduct taking place and profited from it by charging individual drug dealers inflated daily room rates (a "drug tax") for the right to openly sell drugs within the hotel. M.B. advised she and her boyfriend (K.S.) moved into the Han Gil Hotel in April 2018 and began distributing drugs out of a room immediately with a drug dealer named "Black" (later identified as Bryan

Reshad Hill).  M.B. and K.S. were arrested in August 2018.

11.     Beginning in approximately August 2018, DEA agents initiated an investigation into the criminal activity that was occurring within the Han Gil Hotel. The investigation revealed that the Han Gil Hotel was a location where persons habitually went to engage in criminal activity including the distribution and purchase of Schedule I and Schedule II controlled substances, unlawful possession of firearms, prostitution, aggravated assault, and murder.  These criminal activities including acts of extreme violence frequently occurred at the Han Gil Hotel and the hotel was routinely used in furtherance of these criminal activities. Your Affiant has observed surveillance videos of individuals being tortured with a butane blow torch inside room #342 of the Han Gil Hotel.

12.     Your Affiant knows that the investigation into the Han Gil Hotel lasted approximately two years.  Surveillance and interviews revealed that throughout 2018 and up until March 2019, multiple guest rooms within the Han Gil Hotel were utilized as "traps." Drug customers could go to one of the "trap" rooms to purchase and use various controlled substances.  In some instances, "trap" rooms were not furnished with a bed.  A table within the room was used to cut, package, and distribute quantities of heroin, cocaine, and methamphetamine.  Following a purchase, customers were allowed to use sofas and chairs within the room while they injected or smoked the drugs.  "Trap rooms" operated twenty-four hours a day seven days a week. Overdoses were common inside the hotel. Your Affiant knows that between April 2018 and March 2019, multiple drug users died after purchasing heroin from Han Gil drug dealers. A group referred to as the "clean-

up crew" was paid by the hotel owner to remove the bodies from the Han Gil Hotel. The Han Gil Hotel was located within 1000 feet of a Dallas elementary school.

## Probable Cause

13.     During the investigation into the Han Gil Hotel, investigators learned that individuals associated with **DAVIS** were at one time distributing narcotics out of "trap" rooms at the former Han Gil Town Hotel, prior to the property being seized and destroyed by the United States Drug Enforcement Administration (DEA). More than twenty defendants including the hotel owner were arrested for participating in drug distribution activities at the Han Gil Hotel. Your affiant knows that multiple drug dealers that were not charged in the Han Gil Hotel investigation moved to other Dallas-area hotels and continued distributing drugs to customers. The investigation has revealed that **DAVIS** and others known to your affiant have been utilizing hotels in the Dallas-area to distribute drugs to customers for the past several months. Most recently, **Davis** has been paying for and utilizing multiple rooms at the Motel 6 located at 2660 Forest Lane #109, Dallas, Texas to further his drug distribution activities.

14.     On February 17, 2023, investigators with DEA Dallas utilized a Grand Prairie Police Department (GPPD) Confidential Source (CS) to conduct a controlled purchase of crack cocaine from a "trap" room at Motel 6 located at 2660 Forest Lane #109, Dallas, Texas. Investigators knew this location was being operated under the direction of **DAVIS**. **DAVIS** had been observed during surveillance operations routinely coming and going from room #109. The CS, at the direction of DEA investigators, purchased $40.00 worth of crack cocaine inside the hotel room which tested presumptive

positive for cocaine and was submitted to the DEA Dallas Southcentral laboratory for analysis. On March 13, 2023, investigators received the official laboratory report from the DEA South Central laboratory stating the purchased crack cocaine yielded an 83% ± 6% substance purity level.

15.     On February 22, 2023, investigators with the DEA Dallas utilized a GPPD CS to conduct a controlled purchase of crack cocaine from individuals operating a "trap" room at the Motel 6 located at 2660 Forest Lane #108, Dallas, Texas. The CS was equipped with a device that provided investigators with a live feed of audio/video during the operation. Investigators knew this location was being operated under the direction of **DAVIS**. **DAVIS** had been observed during surveillance operations routinely coming and going from room #108. During surveillance of the location, prior to the CS's arrival, investigators observed **DAVIS** and an unidentified black male exit room #109 and then enter room #108. Investigators observed **DAVIS** walking back and forth from between both rooms. Investigators know the unidentified black male that was observed was the same individual that sold the CS crack cocaine on February 17, 2023, from room #109.

16.     On February 22, 2023, the CS entered the hotel room at approximately 12:51 p.m., where multiple customers were waiting to be served. Through the live video feed, investigators were able to identify the individual serving the customers as **Aaron Justice DAVIS**. The CS provided **DAVIS** with $40.00 USC (TXDPS OAF) in exchange for a quantity of crack cocaine. The CS asked **DAVIS** for his cell phone number prior to exiting the room. **DAVIS** wrote "Sonny 972-836-XXXX" on the CS's hand, prior to the CS exiting the room. On March 13, 2023, investigators received the official laboratory

report from the DEA South Central laboratory stating the purchased crack cocaine

yielded an 88% ± 6% substance purity level. Below is a screenshot from the recorded buy

of **DAVIS** bagging the crack cocaine prior to the sale:



17.    On February 24, 2023, your affiant conducted a surveillance operation at

the previous residence of **DAVIS** and his girlfriend, located at XXXX Hopkins Avenue,

Dallas, Texas. At approximately 8:00 a.m., your affiant observed the garage door of the

residence open. Your affiant observed a white 2014 Land Rover bearing Texas license

plate XXX2744 and a grey 2017 Honda Accord bearing Texas license plate XXX6101 in

the garage. At approximately 8:01 a.m., your affiant observed the grey Honda Accord

reverse out of the garage and head north towards Roper Street. Your affiant identified the

driver of the Honda as **DAVIS**. Your affiant conducted rolling surveillance and followed

**DAVIS** to the Motel 6 located at 2660 Forest Lane, Dallas, Texas. **DAVIS** made no stops

in-between departing the 4619 Hopkins Avenue residence and arriving at the Motel 6.

**DAVIS** pulled the grey Honda Accord into a parking spot on the west side of the building, next to a silver 2019 Mercedes Benz, bearing Texas license plate RZGXXXX, near the first-floor breezeway. Your affiant observed **DAVIS** exit his vehicle and walk to the driver's side of the silver Mercedes Benz.  Your affiant observed another individual exit the vehicle and walk with **DAVIS** through the first-floor breezeway to the east side of the building. Your affiant drove around to the west side of the building and observed both **DAVIS** and the other individual continue down the walkway, stopping in front of room #108. At approximately 8:29 a.m., your affiant observed both men enter room #108, closing the door behind them.

18.     On March 8, 2023, Task Force Officer (TFO) Lance Yager obtained a mobile tracking order authorizing the installation and monitoring of an electronic tracking device for the grey 2017 Honda Accord, bearing Texas License Plate Number XXX-6101. Investigators know that **DAVIS** drove this vehicle daily. The search warrant was issued by Dallas County District Judge Andrew Kupper. On the same date, investigators located the Honda Accord at the Dallas Police Department impounds lot, located at 1955 Vilbig Road, Dallas, Texas. At approximately 4:00 p.m., the order was executed, and the tracking device was installed on **Davis's** vehicle.

19.     Investigators have conducted several physical surveillance operations between the time of the vehicle tracker installation and June 29, 2023. During these operations, **DAVIS** has been observed multiple times leaving his current and previous residences and driving to the Motel 6 located at 2660 Forest Lane, Dallas, Texas. During the physical surveillance operations, on almost every occasion, investigators observed

9

**DAVIS** park the vehicle on the west side of the building. **DAVIS** then exited his vehicle and walked through the first-floor breezeway to the east side of the building where he entered various first-floor hotel rooms that investigators believed were utilized to distribute or store illegal narcotics.

20.     On May 16, 2023, at approximately 9:30 a.m., investigators established surveillance at the Motel 6 located at 2660 Forest Lane, Dallas, Texas. During the course of the surveillance operation, DPD officer Pillar observed **DAVIS** arrive at the location, parking the Honda Accord on the west side of the building. Officer Pillar observed **DAVIS** walk through the breezeway to the east side of the building, entering room #112. During the surveillance operation, Officer Pillar observed consistent foot traffic coming and going from the room, consistent with narcotics distribution. At one point during the surveillance operation, Officer Pillar observed individuals knocking on the door of room #111 without an answer at the door. Officer Pillar observed **DAVIS** opening the door of room #112, directing the foot traffic into his room.

21.     On June 14, 2023, at approximately 12:15 p.m., DPD Officer Pillar was conducting surveillance at 2660 Forest, the Motel 6, and observed **DAVIS** standing near a stairwell on the east side of the building talking with fellow co-conspirator that is a known drug dealer that operated "trap" rooms at the former Han Gil Town Hotel. Officer Pillar observed **DAVIS** enter room #112, and the other individual enter room #110. The doors to #109 and #110 were left open, which is a common indicator when **DAVIS** is overseeing drug sales from his multiple "trap" rooms.

22.     On June 15, 2023, investigators learned that **DAVIS** and his girlfriend had purchased a new home and were no longer residing at the XXXX Hopkins Avenue residence. On the same date, TFO Yager obtained a search warrant for Prospective Location Data related to **DAVIS'**s cellular device. Law enforcement agents identified a residence located at XXXX Baker Avenue, Dallas, Texas as the new residence where **DAVIS** was residing.

23.     On June 23, 2023, at approximately 11:13 a.m., your affiant established surveillance at the Motel 6 located at 2660 Forest Lane, Dallas, Texas. At approximately 11:20 a.m., your affiant observed **DAVIS** exit room #107 on the east side of the building. Your affiant observed **DAVIS** looking up and down the parking lot multiple times while partly submerged from the doorway of room #107. After a few minutes, your affiant observed multiple unidentified males exit rooms #120, and #116, and walk towards and enter room #107 with **DAVIS**. It is the belief of investigators that **DAVIS** was calling a "meeting" with individuals working in his hotel rooms. After a short period of time, all parties except **DAVIS** exited the room, returning to their respective rooms. Investigators continued the surveillance operation and observed consistent foot traffic coming and going from the aforementioned rooms, consistent with narcotics sales. During the surveillance operation, your affiant observed **DAVIS** exit room #107 and walk out of sight.

24.     On June 28, 2023, investigators with the DEA Dallas utilized a DEA CS to conduct a controlled purchase of crack cocaine from **DAVIS**, who was running a "trap" room at the Motel 6 located at 2660 Forest Lane #112, Dallas, Texas. The CS had

previously been used by DEA agents on multiple occasions and has been found to be reliable. Prior to the controlled purchase, **DAVIS** was observed during surveillance coming and going from #112. Investigators also observed the Grey Honda Accord bearing Texas license plate XXX 6101 that **DAVIS** is known to drive parked on the west side of the building in front of room #131. The CS was equipped with a device that provided investigators with a live feed of audio/video during the operation. However, during the controlled purchase operation, the device failed, and investigators lost the capability to further monitor the CS's movements after he/she exited their vehicle and approached room #112. The CS, at the direction of investigators, drove to the east side of the building and parked within proximity of room #112. The CS knocked on the door of room #112 and was granted access by **DAVIS**. Once in the room, the CS stated he/she observed a large "cookie" of crack cocaine on the table of the motel room with a large quantity of smaller crack rocks. Furthermore, the CS stated he/she observe two small pistols on the table within the proximity of the illegal narcotics. The CS stated he/she observed two unidentified black male subjects in the room and an unidentified younger black female.

25.     The CS stated that **DAVIS** became suspicious of his/her cellular device and removed it from the front pocket of the CS's shirt to further inspect the device. The aforementioned device was provided to the CS by investigators to monitor the CS's safety. The CS stated that **DAVIS** then questioned him/her about how the two knew each other. The CS stated after a brief conversation, **DAVIS** served him/her a quantity of crack cocaine in exchange for $20.00 USC utilized from the Grand Prairie Police Department

OAF funds. Investigators observed **DAVIS** look out of the front door, up and down the parking lot multiple times before the CS was permitted to exit the room. TFO Lance Yager conducted a presumptive test of the suspected cocaine which yielded positive results for traces of cocaine. The total weight of the purchased cocaine and packaging was approximately 38.0 grams.

26.     On June 29, 2023, investigators with the DEA North Texas OCDETF executed multiple search warrants relating to **DAVIS's** drug trafficking organization (DTO). At approximately 10:40 a.m., the DEA Dallas SRT team executed a federal search warrant at The Motel 6 located at 2660 Forest Lane Room #112, Dallas, Texas. At the same time, investigators with DEA Dallas OCDETF Strike Force also executed a federal search warrant at XXX Baker Avenue, Dallas, Texas. Prior to the execution of the search warrant at The Motel 6 location, Dallas Police Department Senior Corporal (SRCPL) David Pillar observed **DAVIS** exit room #112 with a black backpack and a black toiletry bag. SRCPL Pillar observed **DAVIS** then enter room #107. As the DEA SRT team was approaching room #112, **DAVIS** exited room #107 and was taken into custody by SRT operators. **DAVIS** was in possession of an Apple iPhone and a black semi-automatic Mossberg MC1SC 9mm pistol, serial number 013713CP. The Mossberg pistol was located in the right front pants pocket of **DAVIS's** person that was seized by SA Derek Dean. Additionally, **DAVIS** had an extra magazine for the weapon in the same pocket.

27.     Knowing **DAVIS** had abandoned the black backpack and toiletry bag, investigators conducted a knock and talk at room #107. DEA GS Todd Brackhahn

contacted the occupant, R.D. in room 107. R.D. gave GS Brackhahn consent to search the room, as witnessed by SRCPL Pillar. Underneath a pile of laundry, SRCPL Pillar located the black backpack which contained the black toiletry bag. Inside the black toiletry bag, Special Agent (SA) Ryan Slicker located a tan knit bag. Inside the knit bag, SA Slicker located multiple clear plastic sandwich baggies that contained a large quantity of crack cocaine. Additionally, SA Slicker located a clear plastic baggie that contained multiple round blue pills with the imprint M30. Investigators know from their training and experience these pills are consistent with counterfeit pharmaceuticals that contain fentanyl. Also, in the knit bag, SA Slicker located a clear plastic baggie with a quantity of marijuana. At the bottom of the toiletry bag, SA Slicker located a clear plastic sandwich baggie that contained a large crack cocaine "cookie." Loosely, inside the backpack, SA Slicker located a large digital scale, a small digital scale, and a dark blue knit bag that contained a large quantity of loose ammunition of multiple calibers and the magazine to a Sig Sauer P220-1 .45 cal pistol. Also, in the backpack, SA Slicker located two (2) Anchor Hocking one-quart glass measuring cups. Both glass containers had a white chalky residue on them consistent with cocaine. It is the belief on investigators that **DAVIS** was actively involved in cooking crack cocaine. R.D. was arrested by DPD on a confirmed warrant out of Harris County, Texas. He was transported to the DEA Dallas field division by DPD for further questioning. Photographs of the items located in Room #107 are below:







28.     Inside room #112, investigators located J.P. and O.D. Both individuals were detained pending further investigation. Inside room #112, SA Ted Russell located a quantity of crack cocaine on the bed which is consistent with street-level narcotic sales. Additionally, SA Russell located a small black digital scale and two cellular phones. Your affiant interviewed both individuals to inquire about their knowledge of **DAVIS**. O.D., a customer, stated that he was in the room because he was smoking and bought a "twenty bag" from "Jr." (**DAVIS**). O.D. stated that "Jr" left before agents executed the search warrant. However, O.D. stated that he had purchased crack cocaine from **DAVIS** at the hotel in the past at least 10 previous times and that he sees **DAVIS** at the hotel daily.

29.     Prior to leaving the search warrant location, your affiant served an administrative subpoena on the management of The Motel 6. The manager provided your affiant with receipts that showed **DAVIS** rented room #108 from June 21 – June 22, 2023. The manager provided an additional receipt showing that **DAVIS** rented room #112 from June 26 – June 29, 2023. The manager advised agents that **DAVIS** was seen at the hotel almost every day since December 2022.

30.     At the 4010 Baker Avenue, Dallas, Texas location (**DAVIS's** residence), investigators seized a large sum of bulk U.S. currency from a dresser in the master bedroom closet on a shelf next to a black semi-automatic Taurus G2C 9 mm pistol with a 30-round extended magazine seated in the weapon, serial number 1C111697. The firearm had one round chambered in the weapon. Investigators seized an additional large sum of U.S. currency from a safe located in the same master bedroom closet on the shelf. A copy of **DAVIS's** birth certificate was found in the safe, near the money. In the same master bedroom closet, investigators located an access door leading to the attic space. Investigators observed a large black duffel bag that contained seven additional firearms. Those firearms are as follows: Anderson Manufacturing AM-15 serial number 21228476; Browning Arms semi-automatic pistol serial number S15ZP20022; Bersa .380 semi-automatic pistol serial number C04413 (confirmed stolen out of DPD); Sig Sauer 9mm semi-automatic pistol serial number 58B130228 (confirmed stolen out of Miami Dade Police Dept); SKS 7.62 rifle serial number D6405; Sig Sauer P238 semi-automatic pistol serial number 27B158499; Beretta PX4 semi-automatic 40 cal pistol serial number PY111422.  It should be noted that the Browning Arms semi-automatic pistol serial

number S15ZP20022 had an attached aftermarket suppressor (silencer) attached to the weapon. ATF SA Mike Wido was informed of the firearm and suppressor and inspected both. See photo below:





31.     At the DEA field division, investigators conducted an interview with the occupant of Room #107 (R.D.).  Your affiant and R.D. talked about his addiction to "water" PCP. R.D. stated that **DAVIS** was an individual that he knew from the past and was allowing him to stay in room #107. R.D. stated that he was not involved in anything that **DAVIS** was doing in other hotel rooms. R.D. stated that **DAVIS** would come to room #107 from #112 when he thought it was "hot" Your affiant knows that R.D. was stating that **DAVIS** would leave room #112 and conceal himself in room #107 when he felt law enforcement was present in the area. R.D. gave your affiant consent to download his cellular phone and to look through the phone to see if there were any communications between himself and **DAVIS**. Your affiant located a message R.D. sent to **DAVIS** shortly before the execution of the search warrant stating, "That's the laws."

32.     In total, investigators seized approximately 133.6 grams of cocaine, 48.6 grams of suspected fentanyl, and 106.7 grams of marijuana. TFO Dave Garcia conducted a presumptive test of the suspected cocaine as witnessed by SA Myles Willis. The suspected fentanyl was sent to the DEA Southcentral laboratory for analysis.

33.     Your affiant knows on July 8, 2020, **DAVIS** was arrested during a traffic stop in Montgomery County, Texas and charged with money laundering and manufacture and delivery of a controlled substance. Montgomery County law enforcement agents seized 139.5 grams of cocaine from **DAVIS** during the traffic stop. After the initial seizure, **DAVIS** advised investigators that he had an additional quantity of cocaine on his person. During a post-arrest interview with Texas DPS investigators, **DAVIS** stated all of the cocaine seized during the traffic stop belonged to him. Investigators also located a

19

bottle of promethazine under **DAVIS's** seat. Also, under **DAVIS's** seat, investigators located a blue bag containing $5,869 in drug proceeds. Furthermore, DPS investigators located a Taurus 9mm semi-automatic pistol serial number TKP21785, in the center console of the vehicle **DAVIS** was driving in. At the time of his arrest on June 29, 2023 at the Motel 6, **DAVIS** had an active outstanding warrant on this case.

34.     Based on the aforementioned facts and circumstances, together with my training and experience, I believe that there is sufficient probable cause to believe that since at least January 2023 to June 29, 2023, **Aaron Justice DAVIS Jr aka "Sonny,"** conspired with others known and unknown to possess with the intent to distribute and distribute a mixture or substance containing a detectable amount of cocaine base, a Schedule II controlled substance in violation of Title 21 U.S.C. 846.

_____
JUSTIN W. GUINN
TASK FORCE OFFICER, DEA

Sworn to before me and Affiant's signature confirmed, all via reliable electronic means, pursuant to Fed. R. Crim. P. 4.1., on June 30, 2023.

_____
RENEE HARRIS TOLIVER
MAGISTRATE JUDGE
NORTHERN DISTRICT OF TEXAS